

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00333-CV

_____

REX PERFORMANCE PRODUCTS, LLC, Appellant

V.

JAMES DONALD TATE AND MICHAEL CUFFIA, Appellees

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-314043-19

Before Kerr, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Rex Performance Products, LLC (Rex) appeals from orders dismissing its case (the first lawsuit) against Appellees James Donald Tate and Michael Cuffia and denying its motion to reinstate.

This is the third appeal in the first lawsuit. After mandate issued in the two prior appeals and while the first lawsuit was still pending, Appellees filed a new lawsuit against Rex and others (the second lawsuit), which involved claims that Appellees' attorney acknowledged should have been filed as a counterclaim in the first lawsuit "but the file was closed and [he] could not get in to get it filed there."

More than nineteen months after the last appellate mandate issued in the first lawsuit, Appellees moved to dismiss the first lawsuit for want of prosecution. The trial court granted the motion, dismissed the lawsuit, and later denied Rex's motion to reinstate.

In this appeal, Rex complains that the trial court abused its discretion (1) when it dismissed the first lawsuit because it "fail[ed] to consider the entire history of the case, the activity of the case, the readiness for trial, and the relevancy of the [second lawsuit]" and (2) when it denied Rex's motion to reinstate because "the alleged failures were not intentional or the result of conscious indifference, but were reasonably explained." Rex relies on delays it contends Appellees and their counsel caused in the

second lawsuit for its delay in prosecuting the first lawsuit. Because the trial court abused its discretion by denying reinstatement, we will reverse and remand.

## II. BACKGROUND

Because the procedural and factual histories of the prior appeals are relevant to the current appeal, we first present a background summary of those cases. In addition, we will outline the history of the second lawsuit but limit our review of that case to the procedural history relevant to the issues currently before us.

### A. First Appeal in First Lawsuit

The first lawsuit deals with the sale of Rex's assets to Pregis Performance Products, LLC. *See Rex Performance Prods., LLC v. Bettegowda (Rex I)*, No. 02-18-00171-CV, 2019 WL 3955205, at *1 (Tex. App.—Fort Worth Aug. 22, 2019, no pet.) (mem. op.). Tate was Rex's president and chief executive officer, and Cuffia was Rex's director of operations. *Rex Performance Prods., LLC v. Tate (Rex II)*, No. 02-20-00009-CV, 2020 WL 7776795, at *1 (Tex. App.—Fort Worth Dec. 31, 2020, pet. denied) (mem. op.). In the first lawsuit, Rex—a Michigan limited liability company and a manufacturer of polyethylene foam[1]—sued Pregis, Tate, Cuffia, and others, alleging that Tate had secretly negotiated a "side deal" or "super bonus" for himself and Cuffia when he arranged the sale of Rex's assets to Pregis.[2] *Rex I*, 2019 WL 3955205,

---

[1]*Rex II*, 2020 WL 7776795, at *1.

[2]Rex and others also sued Tate in a Michigan circuit court on the same day that the first lawsuit was filed.

at *1. Rex also contended that Tate had deliberately downloaded a virus onto Rex's computer to destroy evidence of his having reduced Rex's sales price in a tradeoff for his and Cuffia's "super bonus." *Rex II*, 2020 WL 7776795, at *1. In response, Pregis and Manu Bettegowda—Pregis's agent—filed special appearances, which were granted by the trial court. *Rex I*, 2019 WL 3955205, at *1.

In *Rex I*, Rex brought an interlocutory appeal of the order granting the special appearances. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). We affirmed, and mandate issued on April 14, 2020. *Rex I*, 2019 WL 3955205, at *1.

## B. Second Appeal in First Lawsuit

After the first appeal, Appellees sought traditional and no-evidence summary judgment that: (1) Rex had known of the "super bonuses" before the sale; (2) Rex had waived or ratified any alleged breach; (3) there was no evidence of damages, or Rex's damages had been waived or ratified; and (4) there was no evidence that Tate had downloaded a virus onto his computer, or there was evidence that the virus had been due to a ransomware demand. *Rex II*, 2020 WL 7776795, at *6. The trial court granted Appellees' motion for summary judgment and severed all of Rex's claims against them. *Id.* at *1, 6. In *Rex II*, Rex appealed the summary judgment order. *Id.*

We affirmed the portion of the summary judgment dismissing the claim that Tate had breached his common law fiduciary duty by downloading a virus on Rex's computer, and we reversed the remaining portions of the summary judgment and remanded those matters for trial. *Id.* After multiple post-judgment motions were

4

filed and the supreme court denied a petition for review, mandate issued on October 22, 2021.

## C. Second Lawsuit

On February 23, 2022, Appellees filed the second lawsuit against Rex and Rex Hansen; Hansen had been Rex's "administrative manager," *Rex I*, 2019 WL 3955205, at *1, and was a partial owner of two companies that held Rex's equity. *Rex II*, 2020 WL 7776795, at *1. This lawsuit, which was in a different trial court than the first lawsuit, also arose out of the sale of Rex's assets and dealt with the payments allegedly due Appellees in connection with the sale. Rex contended that the claims in the second lawsuit "ar[o]se out of the same facts and circumstances" and "include[d] all the same parties, witnesses, and documents" as the first lawsuit. In addition, Rex asserted that the claims in the second lawsuit were "compulsory counterclaims" and should have been filed in the first lawsuit. Appellees' attorney agreed in a March 21, 2022 letter to Rex's attorney, stating that he "would have made [the second lawsuit] a *Counterclaim* in the existing case pending in the 141st Court, but the file was closed and [he] could not get in to get it filed there."[3] He added, "[O]nce I get service, I would

---

[3]The record is not clear why the new claims could not be filed in the first lawsuit. In its motion to reinstate, Rex stated that "[p]resumably, this is because, even though the Court of Appeals issued its mandate on October 22, 2021, this case remained administratively closed and the Clerks would not accept an amended pleading." To support this belief, Rex attached a copy of the trial court's docket sheet "with entries stating that the case is clos[ed] during this intervening time period."

5

entertain a motion to have this [second lawsuit] transferred and consolidated with the case in the [first lawsuit] if you are serious about taking this case forward."

In response to the second lawsuit, Rex filed alternative motions to stay or dismiss, and Hansen filed a special appearance. According to Rex, the second lawsuit could not proceed until Hansen's special appearance was heard and determined. As Rex's attorney explained in his affidavit:

> Given the same facts of [the first lawsuit] and the [second lawsuit], this case should not have been prosecuted to trial because of the possibility that the [second lawsuit] would need to be consolidated with [the first lawsuit] in the event that Plaintiff's Motion to Dismiss and Rex Hansen's Special Appearance were denied. To allow one case to proceed while the other was unresolved could invoke issues with *res judicata*, claim preclusion, or conflict with the final judgment rule. In fact, the parties' counsel discussed the consolidation of the two cases. [Rex] was simply waiting for a ruling on its motion in the [second lawsuit] before continuing to prosecute this case, which was delayed by the multiple requests that the hearing be re-set by counsel for the [Appellees].

The motions to stay or dismiss and Hansen's special appearance in the second lawsuit were initially set for hearing on September 15, 2022. However, Appellees' counsel requested a reset due to a prescheduled trip out of the country. After a reset date was obtained, Appellees' counsel requested a second reset in order to depose Hansen. After deposition dates were scheduled, Appellees' counsel requested a third reset. Thereafter, Appellees' attorney advised Rex's attorney that he would be out for several weeks due to shoulder surgery and the Thanksgiving holiday. Appellees' counsel later sought the deposition again, but Rex's attorney refused, pointing out that more than a year had elapsed since the motions were filed.

6

Appellees then filed a motion for continuance of the special appearance hearing, citing the need to depose Hansen. The trial court granted the continuance and ordered that the deposition occur on or before July 31, 2023.[4]

**D. Motions to Dismiss and Reinstate in the First Lawsuit**

On June 14, 2023, Appellees filed their motion to dismiss for want of prosecution in the first lawsuit. In the motion, they contended that Rex "has done <u>absolutely nothing</u> to pursue its reinstated claims since the Court of Appeals' *Opinion* in December 2020 and issuance of the *Mandate* in October 2021." Appellees urged dismissal under both Texas Rule of Civil Procedure 165a and the court's inherent power. Rex filed a response to the motion in which it contended that "the delay in prosecuting the case lays at the feet of the [Appellees]" due to the "courtesy re-sets" of the hearing on the motions to stay or dismiss and the special appearance in the second lawsuit. Rex also requested a trial setting.

At the dismissal hearing, the trial court refused to consider the second lawsuit.

THE COURT: And I don't care what is in [the second lawsuit's] court.

. . . .

---

[4]In its brief, Rex notes that after the trial court granted the motion to dismiss and denied the motion to reinstate in the first lawsuit, the second lawsuit was transferred to the trial court hearing the first lawsuit. After the transfer, on November 1, 2023, the trial court granted Hansen's special appearance and dismissed the case against him. The transfer order, which was signed on September 26, 2023, is part of the clerk's record in the appeal of the order granting Hansen's special appearance. The appeal of the order granting the special appearance is currently pending in appellate cause number 02-23-00441-CV.

7

[REX'S COUNSEL]: . . . [W]e set in September of '22 our special appearance in that court. Now, remember, that case is based on - -

THE COURT: What do I care about a case in the [court with the second lawsuit]? Why aren't you prosecuting this case?

[REX'S COUNSEL]: Well, I believe that I have prosecuted it, Judge. . . . So we have taken depositions all over the country. . . . We have served discovery on each other multiple times, we produced documents back and forth, we've amended our petition three times. We're on our third amended petition, I think it is.

. . . .

THE COURT: I don't care about anything in another court.

[REX'S COUNSEL]: Well, it's all the same facts and circumstances, Your Honor.

THE COURT: Then try it over there.

. . . .

THE COURT: I don't care what's going on in the [court with the second lawsuit] until they're consolidated.

After the hearing, the trial court granted the motion and dismissed the case.

Rex then filed a motion to reinstate. At the hearing on the motion to reinstate, Rex again tried to explain the impact of the second lawsuit on the first lawsuit, but the trial court did not want to consider it.

THE COURT: I don't have to wait on your case in [the second lawsuit's] court. That's not my problem. So if you can't figure out how to get him in the courtroom, that's your fault.

[REX'S COUNSEL]: Well, Your Honor, I guess my point would be we owe each other courtesy, he's had surgery, I'm trying to be a good

8

guy. And now I - - I extended these deadlines for him. It wasn't the client. It was for [Appellees' counsel's] schedule. If you look at it, there were no vacation letters on file. I did this because we're supposed to be good colleagues to each other, and now they have taken that goodwill and they've stabbed me in the back with it.

Because if we try these two cases separately, they're the same thing. We run into issues with final judgment - -

. . . .

THE COURT: Why don't you file a motion to consolidate and forget your special appearance?

[REX'S COUNSEL]: I mean, that's - - the client has a right to assert his special appearance.

THE COURT: That is not my fault that you gave bad legal advice.

I'm not granting it. It's gone. You can appeal it.

At the conclusion of the hearing, the trial court denied the reinstatement motion. This appeal followed.

### III. DISCUSSION

In two issues on appeal, Rex first asserts that the trial court improperly dismissed the case when it refused to consider the reasons for the delay in the first lawsuit—namely, delays caused by Appellees in the second lawsuit. Second, Rex argues that, even if dismissal was proper, its suit should have been reinstated. Appellees contend that the trial court did not abuse its discretion by dismissing Rex's claims because Rex failed to bring this case to trial or final disposition within eighteen months from the appearance date, thus violating the supreme court's time standards.

9

Moreover, Appellees contend that the trial court had inherent authority to manage its docket and dismiss the case. Appellees also assert that the trial court properly denied reinstatement because Rex "presented no new information or evidence in seeking reinstatement."

## A. Applicable Law and Standard of Review

A party whose case is dismissed for want of prosecution may appeal both the dismissal and the denial of the reinstatement motion. *Pollefeyt v. Tex. Health Res.*, No. 02-19-00260-CV, 2020 WL 1888870, at *4 (Tex. App.—Fort Worth Apr. 16, 2020, no pet.) (mem. op.) (citing *Sellers v. Foster*, 199 S.W.3d 385, 390 (Tex. App.—Fort Worth 2006, no pet.)). We review both the dismissal and the refusal to reinstate for an abuse of discretion. *Id.* A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

Although, if sustained, each challenge—both the one to the dismissal and the one to the denial of reinstatement—is independently sufficient to obtain reinstatement, the distinctions among the challenges affect both our ability to review them and the review's scope. *Maida v. Fire Ins. Exch.*, 990 S.W.2d 836, 838 (Tex. App.—Fort Worth 1999, no pet.). And while a motion to reinstate is not a prerequisite for appeal, it is like a motion for new trial in that it is necessary to develop facts that otherwise would not appear in the record. *Id.* at 838 n.1.

### 1. Dismissal for Want of Prosecution

"[D]ismissal for want of prosecution may be obtained by motion of the trial court or on motion of any party to the suit." *In re Seidler Oil & Gas Dev., LLC*, No. 12-22-00009-CV, 2022 WL 1038102, at *2 (Tex. App.—Tyler Apr. 6, 2022, orig. proceeding) (mem. op.). A trial court derives its authority to dismiss a suit for want of prosecution from two independent sources: (1) Texas Rule of Civil Procedure 165a and (2) a trial court's inherent power to maintain and control its own docket. Tex. R. Civ. P. 165a; *Brown v. Sanders*, No. 02-21-00212-CV, 2022 WL 2071782, at *2 (Tex. App.—Fort Worth June 9, 2022, no pet.) (mem. op.) (citing *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999)).

Rule 165a provides two grounds for dismissal. Tex. R. Civ. P. 165a; *In re Conner*, 458 S.W.3d 532, 535 (Tex. 2015) (orig. proceeding). A trial court may dismiss a case (1) on the "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice" or (2) when a case is "not disposed of within the time standards promulgated by the Supreme Court under its Administrative Rules." Tex. R. Civ. P. 165a(1), (2). The Administrative Rules of the Supreme Court of Texas provide that a civil jury case should be brought to trial or final disposition "so far as reasonably possible" within eighteen months from the appearance date. Tex. R. Jud. Admin. 6.1(a)(1), *reprinted in* Tex. Gov't Code, tit. 2, subtit. F app. However, the rule recognizes that "in especially complex cases or special circumstances it may not be possible to adhere to these standards." *Id.* at 6.1(d).

A delay of unreasonable duration, if not sufficiently explained, raises the conclusive presumption that the plaintiff has abandoned his suit. *Conner*, 458 S.W.3d at 534. To avoid dismissal under Rule 165a(2), a plaintiff bears the burden to produce evidence showing good cause for his failure to prosecute the case within the applicable time standard. *Folsom v. Folsom*, No. 01-22-00531-CV, 2024 WL 187443, at *2 (Tex. App.—Houston [1st Dist.] Jan. 18, 2024, no pet.) (mem. op.).

Independent of the procedural rules, the common law also vests a trial court with inherent power to dismiss when a plaintiff fails to prosecute his case with due diligence. *Brown*, 2022 WL 2071782, at *2 (citing *Villarreal*, 994 S.W.2d at 630). This authority stems from a trial court's power to maintain and control its docket. *Maida*, 990 S.W.2d at 839. "Trial courts are generally granted considerable discretion when it comes to managing their dockets." *Conner*, 458 S.W.3d at 534. However, such discretion is not absolute. *Id.*

### 2. Reinstatement after Dismissal

What a party must show for reinstatement depends on the basis on which the trial court dismissed the case. *AKT Invs., Inc. v. T Jordan Towing, Inc.*, No. 02-22-00058-CV, 2023 WL 415515, at *4 (Tex. App.—Fort Worth Jan. 26, 2023, pet. denied) (mem. op.). When reviewing a trial court's refusal to reinstate a case dismissed for want of prosecution, we look first to the trial court's basis for dismissal. *Brown*, 2022 WL 2071782, at *3. When the dismissal order does not specify the grounds on which the trial court dismissed the case, to determine whether the trial court abused

12

its discretion by denying the motion to reinstate, we must consider all grounds for dismissal and whether the party moving for reinstatement satisfactorily addressed each of them. *Rasco v. Ducars Inv., LLC*, No. 02-21-00375-CV, 2022 WL 4373499, at *3 (Tex. App.—Fort Worth Sept. 22, 2022, no pet.) (mem. op.); *see Henderson v. Blalock*, 465 S.W.3d 318, 323 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (stating that a "failure to address the other possible grounds for the trial court's order [of dismissal] is itself sufficient reason for us to conclude that the trial court did not abuse its discretion in denying the motion to reinstate").

Obtaining reinstatement after dismissal involves, at the least, a reasonable explanation for the failure to appear or diligently prosecute the suit. *AKT Invs., Inc.*, 2023 WL 415515, at *4; *see* Tex. R. Civ. P. 165a(3); *see also Conner*, 458 S.W.3d at 535 (holding that when plaintiffs provided no reasonable explanation for their nearly decade-long delay in prosecuting suit, their failure to show good cause required trial court to dismiss case under inherent power or Rule 165a(2)). When the trial court dismisses a case based on a party's failure to appear, reinstatement is governed by Rule 165a(3), which requires a trial court to grant a properly-filed reinstatement motion if it finds, "after a hearing[,] that the failure of the party or his attorney [to appear] was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." Tex. R. Civ. P. 165a(3); *AKT Invs., Inc.*, 2023 WL 415515, at *4. However, Rule 165a(3)'s

13

reinstatement standard—"conscious indifference"—only applies to cases dismissed for failure to appear. *Maida*, 990 S.W.2d at 841.

What is required for reinstatement on the other two grounds is not as specifically articulated.[5] *AKT Invs., Inc.*, 2023 WL 415515, at *4. As we have stated,

> In *Maida*, we did not expressly articulate what alternate standard applies for reinstatement, but we discussed what is required for a party to avoid dismissal in the first place and held that because the trial court in that case had abused its discretion by dismissing, it had also abused its discretion by denying reinstatement. *Maida*, 990 S.W.2d at 842. Avoiding dismissal under Rule 165a(2) requires a showing of "good cause," which in turn requires a reasonable explanation for not prosecuting the suit within the applicable time standards. Tex. R. Civ. P. 165a(2) . . . . The standard for avoiding dismissal under the trial court's inherent authority also includes a reasonable explanation for the delay as one of the factors that may be considered in determining whether a suit

---

[5]The courts of appeals are split on the standard for reinstatement of a case that has been dismissed for want of prosecution. *Folsom*, 2024 WL 187443, at *4 n.4. Some courts have held that Rule 165a(3)'s standard applies to all dismissals for want of prosecution, including those under Rule 165a and the trial court's inherent power, while others have held that Rule 165a(3)'s standard does not apply to a dismissal under the trial court's inherent power, and others have held that Rule 165a(3)'s standard only applies to dismissal under Rule 165a(1) for failure to appear at a hearing or trial. *Id.*

Regarding what standard should apply to cases dismissed under the trial court's inherent power, Justice Hecht stated in his dissent from the denial of a petition for review,

> The standard should be the same regardless of whether a case is dismissed pursuant to Rule 165a or the court's inherent power. The party must prove that the failure or omission that led to dismissal was the product of an accident or mistake or must otherwise reasonably explain that its actions were not intentional or consciously indifferent.

*Rampart Cap. Corp. v. Maguire*, 1 S.W.3d 106, 107 (Tex. 1999) (Hecht, J., joined by Owen, J., dissenting).

14

has been diligently prosecuted. *Maida*, 990 S.W.2d at 842. Those factors include "the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay." *Id.*

*Id.* at \*5. Of the four factors, no single factor is dispositive. *Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 763 (Tex. App.—Dallas 2011, no pet.) (citing *WMC Mortg. Corp. v. Starkey*, 200 S.W.3d 749, 752 (Tex. App.—Dallas 2006, pet. denied)).

## B. Analysis

### 1. Order of Dismissal

As noted above, in reviewing a trial court's refusal to reinstate, we must first look to the court's basis for dismissal. *Maida*, 990 S.W.2d at 839. And because the record here does not contain findings of fact or conclusions of law and the dismissal order does not specify the reason for the dismissal, we must affirm on any theory supported by the record. *Id.* at 839–40.

Here, the dismissal order states that it grants the motion to dismiss and that all of Rex's claims are "dismissed for want of prosecution." Both parties agree that this case involves the trial court's dismissal under Rule 165a(2) for failure to dispose of the case within eighteen months and the trial court's inherent power to dismiss for want of prosecution. Dismissal under Rule 165a(1) for failure to appear at a hearing or trial is not at issue.

Obtaining reinstatement after dismissal on either of these grounds involves, at the least, a reasonable explanation for the failure to appear or diligently prosecute the

15

suit. *AKT Invs., Inc.*, 2023 WL 415515, at *4. Therefore, we must look at the evidence before the trial court when it ruled on Rex's reinstatement motion. *See id.* at *5.

## 2. Motion to Reinstate

In its motion to reinstate, Rex argued that the reason the case should be reinstated was "straightforward" because Appellees' counsel "requested multiple professional courtesies from [Rex] to reschedule hearings because of counsel's personal conflicts." After Rex "as a matter of professionalism and collegiality agreed to reschedule hearings several times," Appellees' counsel "exploited [Rex's] professionalism and good will" and asked that the case be dismissed. According to the motion, "Given the evolution of events, it[']s reasonable to conclude that the acts of Counsel for the [Appellees] were intentional to obtain this dismissal."[6]

Rex pointed out that when the mandate was issued in the second appeal on October 22, 2021, "[a]t that point, Plaintiff's case was ready to proceed to trial." However, according to the motion, on February 23, 2022, Appellees filed the second lawsuit, which included "all of the same facts as [the first lawsuit] and the claims asserted by the [Appellees] are clearly compulsory counterclaims that should have been filed in [the first lawsuit]." Further, the second lawsuit "was filed by [Appellees] on the last day of the limitations period." And because Appellees' counsel

---

[6]In their appellate brief, Appellees refute this contention as "untrue" and with "no evidence" supporting it. "Rather, the undersigned requested that the hearing on Rex Hansen's . . . *Special Appearance* be reset or continued due to being out of the country/state, the need to depose Hansen regarding his *Special Appearance*, and medical reasons following a significant shoulder injury that required surgery and recovery."

16

acknowledged that the second lawsuit should be transferred and consolidated with the first lawsuit, "this Court should consider the events taking place in the [second lawsuit] while considering this Motion to Reinstate, because those events should have been taking place in this Court."

Moreover, according to Rex, activity was delayed in the first lawsuit because the special appearance in the second lawsuit needed to be heard before it could agree on a consolidation or transfer without risking waiver of the special appearance. *See* Tex. R. Civ. P. 120a(2) ("Any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard."); *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("A defendant that does not strictly comply with the procedural requirements of Rule 120a, including the due-order-of-pleading and due-order-of-hearing requirements, waives its jurisdictional challenge and enters a general appearance.").

As noted in the motion to reinstate, the hearing on the special appearance was set four times but rescheduled (1) "because Counsel for [Appellees] was on vacation," (2) "because Counsel for [Appellees] determined that he needed to depose Rex Hansen in order to respond to Rex Hansen's Special Appearance," (3) "because Counsel for [Appellees] was, again, out of town," and (4) because "Counsel for [Appellees] advised [Rex] that he was undergoing shoulder surgery." When Appellees' counsel did not schedule the deposition, Rex reset Hansen's special appearance and

17

motions to dismiss, and Appellees' counsel again moved to continue the hearing. The judge in the second lawsuit granted Appellees' continuance motion and ordered that the deposition be taken on or before July 31, 2023. According to the reinstatement motion, the deposition was taken on July 25.

The reinstatement motion also set out the actions that had been taken in the first lawsuit. In addition to outlining the history of the two prior appeals, Rex referenced and attached the written discovery and discovery motions in the first lawsuit. According to Rex, its attorney attended over ten depositions in five states from February 15 to August 13, 2019, attaching a chart setting out the dates, deponents, and locations of the depositions. Also attached to the motion was an eleven-page affidavit of Rex's attorney as well as several hundred pages of supporting documents. The reinstatement motion concluded with Rex's stating that its "delay in bringing this case to final disposition was neither intentional nor the result of conscious indifference, but rather, the result of the professional courtesy extended by [Rex's] counsel to [Appellees'] counsel."

### 3. Application of Law to Facts

Rex's reinstatement motion offered proof that its failure to timely prosecute or dispose of the first lawsuit was due to the pendency of the second lawsuit. *See Gillis v. Harris Cnty.*, 554 S.W.3d 188, 194 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("The party seeking reinstatement has the burden and must provide some proof of an adequate justification for the failure that negates intent or conscious indifference.").

It further showed that it was not Rex's actions that caused the delay or a lack of activity in the first lawsuit but rather Rex's attempt to accommodate Appellees' counsel in the second lawsuit. While the trial court refused to listen to evidence about the second lawsuit, the history of the second lawsuit was directly related to the lack of activity in the first lawsuit.

We have stated before "that an evaluation of whether the dismissal of a case for want of prosecution is appropriate requires an examination of the case's unique circumstances." *Rasco*, 2022 WL 4373499, at *6; *see Douglas v. Amer. Title Co.*, No. 14-08-00676-CV, 2009 WL 3851674, at *2 (Tex. App.—Houston [14th Dist.] Nov. 19, 2009, no pet.) (per curiam) (mem. op.) (noting that in reviewing a trial court's dismissal for want of prosecution, an appellate court must "look at the entire history of the case and perform a fact intensive, case-by-case determination" (citing *Olin Corp. v. Coastal Water Auth.*, 849 S.W.2d 852, 856–58 (Tex. App.—Houston [1st Dist.] 1993, no writ))). Here, those "unique circumstances" necessitated a review of what happened in the second lawsuit, which the trial court refused to do, and this was an abuse of discretion.

While Appellees in their response to the reinstatement motion emphasized the lack of activity for thirty months since our opinion issued in the second appeal and nineteen months since mandate issued, those spans of time consider neither the activity in the related second lawsuit nor the fact that the supreme court's administrative rules expressly provide that "in especially complex cases or special

19

circumstances it may not be possible to adhere to these standards." Tex. R. Jud. Admin. 6.1(d), *reprinted in* Tex. Gov't Code, tit. 2, subtit. F app.; *see Jones v. Morales*, 318 S.W.3d 419, 427 (Tex. App.—Amarillo 2010, pet. denied) (stating that the "application of Rule 6 [setting guidelines for disposition of cases] is discretionary and nonbinding" and "does not fix a bright line demarking the outward limit of a trial court's discretion to control its docket"); *see also Boullt v. Smith*, No. 03-02-00303-CV, 2004 WL 2357881, at *7 (Tex. App.—Austin Oct. 21, 2004, no pet.) (mem. op.) ("Although there are cases holding that it was not an abuse of discretion to dismiss a case pending for a period of time similar to the twenty months in this cause, most cases involving dismissal for want of prosecution seem to involve much longer periods of time than the two years total and the one year of inactivity involved in this case." (footnote omitted)). Rule 165a does not grant a trial court the absolute right to dismiss a case pending longer than the supreme court's guidelines without regard for any justification for the delay. *Boullt*, 2004 WL 2357881, at *7.

Here, the record shows a justification for the delay and does not show a lack of diligence on Rex's part in either the first or second lawsuit. As noted by Rex, this case has involved multiple sets of written discovery to various defendants, the filing of three amended petitions and several discovery-related motions, ten depositions in five different states, an appeal of a special appearance, and an appeal of a summary judgment. As evidence, Rex attached documents from the second lawsuit: the pleadings; the motion to stay or, in the alternative, the motion to dismiss; the special

20

appearance; Appellees' multiple motions for continuance; and the trial court's order granting the last continuance motion and setting a deadline for Hansen's deposition. *Cf. Maughan v. Emps. Ret. Sys. of Tex.*, No. 03-07-00604-CV, 2008 WL 2938867, at *4 (Tex. App.—Austin Aug. 1, 2008, no pet.) (mem. op.) ("[W]e decline to consider what was or might have been done in an 'allegedly related lawsuit' when we have no evidence of what actions were in fact taken.").

Based on the uncontroverted evidence, Rex provided a reasonable explanation for not diligently prosecuting the suit within the applicable time. *See AKT, Invs., Inc.*, 2023 WL 415515, at *4 (stating that obtaining reinstatement after dismissal under either Rule 165a or a court's inherent power "involves, at the least, a reasonable explanation for the failure to appear or diligently prosecute the suit"); *see also Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) ("Proof of such justification—accident, mistake, or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied.").

While we recognize that the case was on file for longer than a civil suit generally should be, Rex provided a reasonable explanation for why that happened and showed good cause for reinstatement. *See AKT, Invs., Inc.*, 2023 WL 415515, at *9 (stating that while "the case was on file for longer than a civil suit generally should be and that very little activity was conducted in the case," appellant "provided a reasonable explanation for how that happened and showed good cause for reinstatement"); *see also Martinez v. Benavides*, No. 04-05-00618-CV, 2006 WL 1993773,

21

at *3 (Tex. App.—San Antonio July 19, 2006, no pet.) (mem. op.) (stating that, although twenty months had elapsed from filing until order of dismissal for want of prosecution, this "is not in and of itself dispositive of the dismissal issue").  Moreover, we recognize that the policy of this state is that adjudication on the merits is preferred. *AKT, Invs., Inc.*, 2023 WL 415515, at *9 (citing *Kramer v. Kastleman*, 508 S.W.3d 211, 227 (Tex. 2017)); *see Valance Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435, 444 (Tex. App.—Texarkana 2010, no pet.) (stating that "a just resolution of the case usually requires a trial on the merits, rather than a dismissal").

Therefore, we conclude that the trial court abused its discretion by denying Rex's motion to reinstate, and we sustain Rex's second issue.  Because we agree that the trial court erred by failing to grant the motion to reinstate, we need not consider Rex's first issue.  *See* Tex. R. App. P. 47.1; *Mack v. Ret. Hous. Found.*, 627 S.W.3d 391, 394 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("Because we agree that the trial court erred in failing to grant Mack's motion to reinstate, we need not consider Mack's first issue [dismissing the case for want of prosecution]."); *Ray v. Swindle*, No. 05-97-01914-CV, 2000 WL 973776, at *3 (Tex. App.—Dallas July 17, 2000, no pet.) (not designated for publication) (sustaining appellant's second issue complaining of trial court's failure to reinstate and stating it was unnecessary to address the first issue complaining of trial court's dismissing lawsuit for want of prosecution).

## IV. CONCLUSION

We reverse the trial court's order denying Rex's motion to reinstate and remand the case to the trial court for further proceedings.

/s/ Dana Womack

Dana Womack
Justice

Delivered: April 11, 2024